UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| SHARHONDA T. SHAHID, ) | |
| ) | |
| Debtor, ) | |
| ) | |
| ) | |
| ) | |
| SHARHONDA T. SHAHID, ) | |
| ) | |
| Plaintiff/Appellant, ) | |
| ) | |
| vs. ) | Case No. 4:14CV1211 RLW |
| ) | |
| FNBN I, LLC by PennyMac Loan Servicing, ) | |
| LLC, its servicing agent, ) | |
| ) | |
| Defendant/Appellee, ) | |
| ) | |
| and ) | |
| ) | |
| AMY QUINTERO, ) | |
| ) | |
| Defendant/Appellee. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Notice of Appeal by Sharhonda T. Shahid (hereinafter "Shahid") (ECF No. 1), under 28 U.S.C. §158(a)(3) from the Bankruptcy Court's Order granting summary judgment in favor of FNBN 1, LLC ("FNBN") and Amy Quintero ("Quintero") (Case No. 12-4006, ECF No. 88). In addition, Shahid has filed a Motion to Stay Pending Appeal (ECF Nos. 8-9) and Motion for Oral Argument (ECF No. 10). The Court enters Judgment in favor of FNBN and Quintero and denies all other pending motions as moot.

### BACKGROUND

On March 8, 2007, Appellant Shahid entered into a loan agreement with The First National Bank of Arizona ("FNB of Arizona"), predecessor in interest to Appellee FNBN. Shahid executed a Promissory Note ("Note") in the amount of $299,000. The Note was secured by a Deed of Trust ("DOT"), which granted a security interest in favor of FNB of Arizona as to the real property commonly known as 4335 Keevenshore Drive, Florissant, Missouri 63034. The Note secured by the Deed of Trust defines "Lender" as "First National Bank of Arizona." The Note further states that the Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

On or around June 30, 2008, FNB of Arizona merged with The First National Bank of Nevada ("FNB of Nevada"). On July 25, 2008, the Office of the Comptroller of the Currency ("OCC") closed FNB of Nevada and named the Federal Deposit Insurance Corporation ("FDIC") as Receiver. FNBN took title to the aforementioned loan on December 29, 2008 pursuant to a "Loan Contribution and Assignment Agreement" entered into between FNBN and FDIC as Receiver for FNB of Nevada. Pursuant to the agreement, FDIC transferred to FNBN all of its right, title, and interest in the loans described in the attachment thereto, which included Shahid's loan. On the same day, FNBN and PennyMac Loan Services ("PennyMac") entered into a "Servicing Agreement" whereby PennyMac would act as servicer and agent of FNBN.

The Note has three allonges. The first allonge bears two endorsements. The first endorsement indicates a transfer from FNB Arizona to FNB Nevada. The second endorsement shows a transfer from FNB Nevada to FDIC as Receiver for FNB Nevada. The Note contains a second allonge which contains an endorsement representing a transfer of the Note from the FDIC as Receiver for FNB Nevada to FNBN. The Note contains a third allonge which contains an endorsement in blank. All three allonges are physically attached to the Note. The original Note is in the possession of the attorney for Creditor FNBN and is currently secured in a fire proof safe.

On September 5, 2012, Shahid filed a Petition seeking relief under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Missouri. *See* Case No. 13-48698. In Schedule A of her Petition, Shahid identified an interest in the property located at 4335 Keevenshore Drive, Florissant, Missouri 63034 ("Property"). FNBN filed a Proof of Secured Claim on October 22, 2012. (Case No. 13-48698, ECF No. 20). Appellant filed two objections to FNBN's Proof of Claim. Upon denial of Shahid's objection to FNBN's Proof of Claim and FNBN's filing of a Motion for Relief from the Automatic Stay, Shahid initiated the Adversary Action from which this appeal arises (Case No. 4:13- 4006). Shahid's Adversary Complaint was filed against FNBN and Amy Quintero ("Quintero"). After cross filings of motions for summary judgment, the entered Judgment in favor of FNBN and Quintero on June 24, 2014.

## STANDARD OF REVIEW

On appeal, "the district court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error." *In re Tasic*, No. 4:13CV00479 ERW, 2013 WL 2425133, at *3 (E.D. Mo. June 4, 2013)(citing *In re O'Brien*, 351 F.3d 832, 836 (8th Cir. 2003)).

The instant case was decided by cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

3

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Anderson*, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

Plaintiff raises four points on appeal:

> (1) The Court's error in holding that the shelter rule authorizes the Court to disregard Missouri legal precedence [sic] regarding unattached allonges to a note. (2) The Court's misapplication of Missouri allonge law whereby the Court erroneously held the unattached allonges conveyed a secured interest in the subject property. (3) The Court's failure to consider whether the results of the FDIC investigation which found the note was never transferred to FNBN, which challenges the validity of any chain of title involving FNBN. (4) The bankruptcy court's error in granting Defendants' cross motions for summary judgment where disputed issues of material fact remained and thereby summary judgment should not have been entered in favor of Defendants to dispose of the disputed issues of material fact.

(ECF No. 15 at 9-10).

### I. Application of the Shelter Rule and Allegedly Unattached Allonges

The "shelter rule," codified in Section 400.3–203(b) provides that:

> Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

Under the shelter rule, "the transferee of an instrument, notwithstanding a potential defense, nevertheless acquires the rights of the transferor." *Pitman Place Dev., LLC v. Howard Investments, LLC*, 330 S.W.3d 519, 535 (Mo. Ct. App. 2010)(citing *Bremen Bank and Trust Co. of St. Louis v. Muskopf,* 817 S.W.2d 602, 607 (Mo. Ct. App. 1991) ("The transfer of an instrument vests in the transferee such rights as the transferor has therein, but only to the extent of the interest transferred."); *Cantrell v. Cafourek,* 513 S.W.2d 690, 694 (Mo. Ct. App. 1974)).

Shahid states that "[i]t is undisputed that no purported allonges were attached to the note." (ECF No. 4 at 18)(citing the bankruptcy court's findings of fact and conclusions of law, ECF No. 87). Shahid states that attaching the allonges to the Note "is not a technical requirement but a substantive requirement under Missouri law that must be satisfied." (ECF No. 4 at 18). Shahid asserts that, under Missouri law, "an unattached allonge does not and cannot effect [sic] a transfer of the note." (ECF No. 4 at 18). Relying on the Third Restatement of Property, Shahid claims that "when the right of enforcement of the note and the mortgages are split, the note becomes, as a practical matter unsecured." (ECF No. 4 at 19).

Shahid contends that the Bankruptcy Court misapplied state law when it held that the unattached allonges were "immaterial" to the secured status of the Note based upon the shelter rule. (ECF No. 4 at 22). Shahid argues that, under Missouri law, "the shelter rule is not available to 'shelter' the failure to attach the allonge [to] the note." (ECF No. 4 at 20). She states that there are no Missouri court cases that cite to the shelter rule as a remedy for failure to attach an

5

allonge to the note. (ECF No. 4 at 21). Rather, Shahid states that Missouri courts have held that allonges must be attached to the note to effect a transfer. (ECF No. 4 at 22).

In response, Defendant FNBN states that Shahid's argument is based upon the presumption that the allonges containing the endorsements of the Note are not physically attached to the Note. (ECF No. 12 at 11). The Bankruptcy Court only found that Ms. Quintero did not mark the date that she endorsed the First Allonge and did not personally affix the First Allonge to the Note. (*Id.*) The Bankruptcy Court, however, only found that Quintero did not personally affix the allonge to the Note when she made the endorsement, not that the allonges were not attached. (*Id.*) FNBN notes that the Bankruptcy Court further found that FNB Arizona merged with FNB Nevada, which was closed by the OCC and then appointed FDIC as Receiver. The Court also held that FDIC agreed to transfer the Note on December 29, 2008 to FNBN, that PennyMac is the agent for FNBN, and that PennyMac has maintained possession of the Note since December 29, 2008. (*Id.*) Notably, the Bankruptcy Court held, in accordance with the affidavit of Rita Garcia,[1] that all three allonges were physically attached to the Note and that the Note, Deed of Trust, and other collateral documents are in PennyMac's possession as agent for FNBN. (*Id.*)

The Court finds that the shelter rule is applicable to the present action. FNBN is entitled to enforce the Note and Deed of Trust because it is in possession of the original Note. The Court finds that the Bankruptcy Court's relevant factual findings are not clearly erroneous. The Bankruptcy Court found that the third allonge contains an endorsement made payable to bearer. (ECF No. 87 at 3); *see In re Box*, No. 10-20086, 2010 WL 2228289, at *5 (Bankr. W.D. Mo. June 3, 2010)("'Bearer' means the person in possession of an instrument, document of title, or certificated security payable to bearer or endorsed in blank."); Mo.Rev.Stat. § 400.3.–205(b). The Bankruptcy Court further held that the third allonge is physically attached to the Note and

---

[1] Rita Garcia is the Manager, Bankruptcy of PennyMac. (Case 13-4006, ECF No. 46-1, ¶2).

constitutes bearer paper. (ECF No. 87 at 3, 10-11). Bearer paper is transferred by the mere transfer of possession. *In re Box*, No. 10-20086, 2010 WL 2228289, at *4 (Bankr. W.D. Mo. June 3, 2010)("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). Based upon the reasonable factual findings of the Bankruptcy Court, the Court holds that PennyMac is in possession of the Note, with the three allonges attached. Because the third allonge is made payable to bearer, it constitutes bearer paper and the shelter rule applies. The Court holds that FNBN acquired the Note and Deed of Trust and, therefore, FNBN is a holder in due course.

## II. FDIC Investigation

Shahid argues that the evidence demonstrates that the FDIC did not sell or transfer the Note to FNBN. Shahid states that, based upon an investigation by the FDIC, the Note was sold to Pennymac LLC, not FNBN. (ECF No. 4 at 24). Shahid claims that the Bankruptcy Court erred when it relied on the termination of consent order to demonstrate that FDIC transferred the note to FNBN. (*Id.*) Shahid claims that there is no competent evidence to establish the authenticity of the FDIC Loan Contribution Assignment Agreement, dated December 29, 2008, based upon the affidavit of Rita Garcia. (ECF No. 4 at 25). Shahid further contends that Rita Garcia lacks personal knowledge of what occurred prior to the Pennymac servicing agreement with FNBN. (*Id.*) Shahid states that because Pennymac Loan Services was not a party to the Loan Contribution and Assignment Agreement between FNBN and FDIC, an affidavit from a Pennymac representative, Ms. Garcia, is not admissible for purposes of admitting the Loan Contribution and Assignment Agreement. (*Id.*) Shahid also claims that her motion for summary judgment put forth evidence from the FDIC that the Note was sold to Pennymac LLC, not Pennymac Loan Services. (ECF No. 4 at 26).

7

In response, FNBN notes that the bankruptcy court founds that the FDIC agreed to transfer the Note on December 29, 2008 to FNBN. (ECF No. 12 at 11). The Bankruptcy Court also found that PennyMac is the agent for FNBN and that PennyMac has maintained possession of the Note since December 29, 2008. (*Id.*)

The Court holds that the factual findings of the Bankruptcy Court are not clearly erroneous. The Bankruptcy Court relied on a letter from PennyMac, which clearly indicated the chain of ownership and expressly told Shahid that the FDIC transferred the loan to FNBN and that PennyMac Loan Services, LLC began servicing the loan as of February 2, 2009. (Case 13-4009, ECF No. 72-6). The Bankruptcy Court also relied on the affidavit of Rita Garcia. (Case 13-4006, ECF No. 46-1). She created the affidavit based upon her own personal knowledge and her review of relevant corporate documents and her investigation into the facts. (*Id.*) Ms. Garcia detailed that the Note has three allonges attached to it. (*Id.*) Ms. Garcia stated that PennyMac received possession of the Note on December 29, 2008, and has retained possession of the Note, Deed of Trust, and other collateral documents since December 29, 2008. (*Id.*) The Court holds that it can rely upon Ms. Garcia's affidavit based upon her personal knowledge and review of the relevant records. *Baker v. Veneman*, 256 F. Supp. 2d 999, 1005 (E.D. Mo. 2003)("It appears to the Court that Mr. Arnold based his Declaration upon his review of the loan files and his experience as a Farm Loan Manager. His statements are therefore based upon his personal knowledge and are not inadmissible hearsay."). Based upon the facts presented, the Court holds that FDIC transferred the Note to FNBN and that PennyMac was its servicer since December 29, 2008.

### III. Other Purported Disputed Issues of Fact

In Count VIII of Shahid's First Amended Adversary Complaint, Shahid contends that Quintero engaged in a conspiracy to defraud Shahid by fraudulently endorsing a note without authority. Shahid contends that the evidence demonstrates that Amy Quintero was not an employee of FNB of Nevada when she endorsed the allonge. (ECF No. 4 at 23). Shahid states that Quintero put forth "no evidence of her employment with Nevada" and "[t]here is no evidentiary basis for the establishment of Ms. Quintero's employment after July 2008." (ECF No. 4 at 23).

In response, FNBN notes that the bankruptcy court found only that Ms. Quintero did not herself personally affix the allonge to the Note at the time she made the endorsement. (ECF No. 12 at 11). FNBN states that Shahid incorrectly assumes that none of the allonges are now physically attached to the Note. (ECF No. 12 at 11). Further, FNBN contends that Quintero provided adequate evidence of her employment with FNB of Nevada and its successor entities, as well as knowledge of Shahid's loan. (ECF No. 12 at 15).

There is a presumption of authorization and authenticity afforded endorsements on negotiable instruments under Mo.Rev.Stat. §400.3-308(a). Section 400.3-308 provides:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under Section 400.3-402(a).

The Court finds that Shahid has failed to rebut this presumption. Rather, the overwhelming evidence is that Ms. Quintero provided an affidavit detailing her

9

employment by FNB Arizona and its successor entities through Oncall Staffing. Ms. Quintero also submitted W-2's that evidenced her employment with Oncall Staffing. (ECF No. 12 at 15). From January 1, 2007 through approximately March 2009, Quintero was employed as an assistant Vice President within the Collateral Warehouse Division of FNB of Arizona and its successor entities FNB of Nevada and the FDIC as Receiver. (ECF No. 11 at 8). During the Receivership, Quintero remained in her same role and was employed by OnCall Staffing. (*Id.*) Quintero's endorsement of allonges was within the course and scope of her duties of employment as an Assistant Vice President in the Collateral Warehouse Division of the FNB of Arizona and its successor entities FNB of Nevada and the FDIC as Receiver. (ECF No. 11 at 9). Therefore, the Court holds that the evidence does not demonstrate that Quintero engaged in a conspiracy to defraud Shahid by fraudulently endorsing a note without authority because Quintero clearly had authority to endorse the allonges.

Accordingly,

**IT IS HEREBY ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED**. An appropriate Judgment accompanies this Memorandum and Order.

**IT IS FURTHER ORDERED** that Shahid's Motion to Stay Pending Appeal (ECF Nos. 8-9) and Motion for Oral Argument (ECF No. 10) are **DENIED**.

Dated this 22nd day of December, 2014.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE